United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 97-1432

| | | |
|---|---|---|
| Eileen M. Wayne, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Genesis Medical Center, an Iowa | * | District Court for the Southern |
| Not for Profit Corporation and a | * | District of Iowa. |
| Successor by Merger with St. Luke's | * | |
| Hospital; St. Luke's Hospital; Douglas | * | (PUBLISHED) |
| Wells; Kristen Wells; James K. | * | |
| McEnerney; William B. Hofmann; | * | |
| Daniel P. Congreve; A.R. Swearingen, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: January 5, 1998
Filed: April 6, 1998
_____

Before WOLLMAN, LOKEN, and HANSEN, Circuit Judges.
_____

PER CURIAM.

Eileen Wayne, M.D., appeals the district court's[1] grant of summary judgment to the defendants in her action asserting violations of the Health Care Quality

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

Improvement Act of 1986 (HCQIA), 42 U.S.C. §§ 11101-52, and state law breach of contract, invasion of privacy, and defamation claims. Wayne, an ophthalmologist, brought this action against Genesis Medical Center and its pre-merger predecessor St. Luke's Hospital (collectively, the hospital),[2] and six physicians, concerning events relating to the temporary suspension of her surgical privileges. We affirm.

## I.

Viewed in the light most favorable to Wayne, the stipulated facts and documents submitted in support of the parties' cross-motions for summary judgment reveal the following. In October 1992, Wayne was a patient at the hospital, where she underwent surgery. Subsequently, Wayne lodged a complaint with the hospital regarding the performance of the surgery. Dissatisfied with the hospital's responses, Wayne removed pages of her medical records she found objectionable. Because Wayne was herself a physician with surgical privileges at the hospital, she had access to hospital medical records, including her own.

When Wayne's action was discovered, the incident was referred to the hospital's Surgery Service Committee for investigation; Wayne declined its invitation to attend its meeting. Because the Surgical Service Committee concluded Wayne's removal of the medical records was a medical staff issue, the matter was referred to a meeting of the hospital's Medical Executive Committee (MEC), which included the physician defendants. Wayne was invited to participate, but again declined. The MEC decided to suspend Wayne's surgical privileges. After Wayne returned the missing records, MEC voted to lift Wayne's suspension.

---

[2]On December 15, 1994, St. Luke's and Mercy hospitals were merged to form Genesis.

In April 1993, Wayne applied for staff privileges at Mercy Hospital. In response to a request for clinical information regarding Wayne, one of the defendants wrote a letter to Mercy's Director of Medical Affairs, in which he stated, inter alia, that Wayne had had her privileges temporarily suspended "because of an incident of alteration of her own personal medical record," but that "[t]his difficulty [had] been resolved." See Appellant's Br. Add. at unnumbered page between pages 25 and 26. In a subsequent letter, the physician defendant clarified that his reference to "alteration" meant only that Wayne had removed certain portions of her medical record from the hospital for a period of time.

Wayne claimed the defendants' actions in summarily suspending her violated the HCQIA, because the suspension was not taken "in the reasonable belief that they were furthering the quality of health care" as required by the Act, and because the HCQIA specifies that hearing panels may not include members "in direct competition" with the physician being reviewed, see 42 U.S.C. § 11112(b)(3)(A)(ii), (iii), and two members of the MEC were ophthalmologists. Wayne also argued that her summary suspension breached a contract created by the hospital's bylaws. Asserting that private facts about her surgery were disseminated and that the defendants discussed her private life at the MEC meeting, Wayne argued her privacy was invaded. Finally, Wayne argued that the defendants defamed her by reporting her suspension to other hospitals and using the term "alteration" in the letter to Mercy.

Wayne and the defendants cross-moved for summary judgment. The district court granted the defendants' motion and denied Wayne's motion. The court reasoned that the HCQIA did not create a private right of action for physicians, and that the statute gave the hospital—the only proper defendant—immunity from Wayne's contract claim. As to the invasion of privacy claim, the district court concluded that Wayne had failed to demonstrate widespread publicity. The court concluded that the defamation claim failed because the letter was substantially true.

II.

We review de novo the grant of summary judgment, using the same standards as the district court and affirming where, viewing the evidence in the light most favorable to the plaintiff, there is no genuine issue of material fact and judgment is appropriate as a matter of law. See Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994). We also review de novo the district court's interpretation of state law. See Canal Ins. Co. v. Ashmore, 126 F.3d 1083, 1085 (8th Cir. 1997).

III.

A. Private Cause of Action Under the HCQIA

Although this court has not had the opportunity to examine whether the HCQIA provides a private cause of action to aggrieved physicians, we can find no bases in the express language of the HCQIA for concluding that it affords such a private cause of action. See 42 U.S.C. §§ 11101-52. In determining whether a private remedy is implicit in the HCQIA, we must consider (1) whether Wayne is a member of the class for whose especial benefit the HCQIA was passed, (2) whether there was a legislative intent to create or deny a private remedy, (3) whether an implied remedy is consistent with the underlying purposes of the legislative scheme, and (4) whether the cause of action is one basically relegated to the states, so that it would be inappropriate to infer a federal cause of action. See Labickas v. Arkansas State Univ., 78 F.3d 333, 334 (8th Cir.) (per curiam) (citing Cort v. Ash, 422 U.S. 66, 78 (1975)), cert. denied, 117 S. Ct. 395 (1996). The critical inquiry is congressional intent; thus the second and third factors carry the most weight in this analysis. See id.

We conclude that none of these relevant factors weighs in favor of an implied cause of action. The HCQIA's grant of immunity to review boards strongly suggests that the Act was not enacted to benefit the physician undergoing peer review. The remaining factors weigh against finding an implied cause of action as well, as it was clearly Congress's intent in enacting the HCQIA, to "improve the quality of medical care by encouraging physicians to identify and discipline other physicians who are incompetent or who engage in unprofessional behavior." H.R. Rep. No. 99-903, at 2 (1986), reprinted in 1986 U.S.C.C.A.N. 6287, 6384. Nothing in HCQIA's explicit language or legislative history otherwise signals an intent to create a cause of action for aggrieved physicians.

We thus join the Tenth and Eleventh Circuits in concluding that the HCQIA does not explicitly or implicitly afford aggrieved physicians a cause of action when a hospital fails to follow the HCQIA's prescribed peer review procedures. See Hancock v. Blue Cross-Blue Shield, Inc., 21 F.3d 373, 374-75 (10th Cir. 1994) (HCQIA does not explicitly or implicitly create a private cause of action for physicians subjected to peer review; Congress did not intend to create cause of action for benefit of physicians); see also Bok v. Mutual Assurance, Inc., 119 F.3d 927, 928-29 (11th Cir. 1997) (per curiam) (agreeing with Hancock that HCQIA does not create cause of action for physicians).

## B. HCQIA Immunity

We agree with the district court that the HCQIA immunizes the hospital from Wayne's breach-of-contract claim. Under the HCQIA, professional review bodies are protected from damages suits under federal and state law for review actions taken:

(1)     in the reasonable belief that the action was in the furtherance of quality health care,

-5-

(2)     after a reasonable effort to obtain the facts of the matter,

(3)     after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4)     in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. §§ 11111(a)(1) & 11112(a).

There is a presumption that these requirements have been met unless the presumption is rebutted by a preponderance of the evidence. See 42 U.S.C. § 11112(a). While we have not had an opportunity to apply the HCQIA's immunity provision, other circuits interpreting the HCQIA have applied an objective standard to section 11112(a)'s reasonableness requirement. See, e.g., Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 635 (3d Cir. 1996); Bryan v. James E. Holmes Reg'l Med. Ctr., 33 F.3d 1318, 1335 (11th Cir. 1994), cert. denied, 514 U.S. 1019 (1995); Austin v. McNamara, 979 F.2d 728, 734 (9th Cir. 1992); see also H.R. Rep. No. 99-903, at 10 (1986), reprinted in 1986 U.S.C.C.A.N. 6287, 6392-93. We agree that section 11112(a) employs an objective standard.

Applying this standard to the facts of this case, we agree with the district court that Wayne failed to rebut the presumption of immunity. In response to the defendants' summary judgment motion, Wayne made conclusory allegations that the defendants were "clearly unconcerned about quality health care regarding other practitioners" and that her conduct, rather than the defendants', was in furtherance of patient interests. We find these allegations insufficient to rebut the presumption established in section 11112(a). See Austin, 979 F.2d at 734 (question is whether reasonable jury, viewing facts in plaintiff's favor, could conclude he had shown by preponderance of evidence that the defendants' actions fall outside of § 11112(a)).

We also conclude that Wayne's claim that two members of the MEC were ophthalmologists in direct economic competition with her is insufficient to rebut the presumption that the peer review process was fair under the circumstances. See Mathews, 87 F.3d at 634-38 (physician's allegations that some review members were competitors was insufficient to rebut presumption that actions met standard for immunity from suit). Section 11112(b)(3)(A)(ii), (iii), which prohibits a hearing officer or panel from including physicians in direct competition with the physician involved, is inapplicable, as the MEC members were not acting as hearing officers. See Mathews, 87 F.3d at 636 (affirming district court's conclusion that HCQIA prohibits direct competitors from being hearing officers, and not from participating in other phases of peer review process).

### C. Remaining State Law Claims

As Wayne did not show the defendant physicians were involved in disseminating information about her surgery or that the defendants did more than discuss her removal of records in committee meetings (referring to her by number), we further conclude the district court properly granted judgment to the defendants on Wayne's invasion of privacy claim. See Restatement (Second) of Torts § 652D (1977) (tort requires publicity of matter highly offensive to reasonable person that is not legitimate concern to public); Stessman v. American Black Hawk Broad. Co., 416 N.W.2d 685, 686 (Iowa 1987) (observing that Iowa has adopted and applied principles of privacy invasion as found in Restatement). The defamation claim is likewise without merit, as Wayne did alter her medical record and was suspended. By removing the pages from her record, she rendered the record less complete than it was originally, and thereby caused an alteration to it. See Behr v. Meredith Corp., 414 N.W.2d 339, 342 (Iowa 1987) (Iowa courts recognize substantial truth as defense to defamation; test is whether "plaintiff would have been exposed to any more opprobrium had the publication been free of error").

IV.

We further conclude the district court did not abuse its discretion in denying Wayne's delinquent motion to amend her complaint, see Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994) (standard of review), or her Federal Rule of Civil Procedure 59(e) motion. See Twin City Constr. Co. v. Turtle Mountain Band of Chippewa Indians, 911 F.2d 137, 139 (8th Cir. 1990) (Rule 59(e) standard of review).

V.

Accordingly, we affirm the judgment of the district court, and we deny all pending motions as moot.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.